**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | | |
|---|---|---|
| In re DONNIE RAY ENNIS and THELMA MARIE ENNIS, | ) ) ) | Case No. 07-60738-LYN |
| Debtors. | ) ) | |

**AMENDED MEMORANDUM[1]**

This matter comes before the court on an objection by Green Tree Servicing, LLC, ("Green Tree") to the confirmation of the chapter 13 plan of Donnie Ray Ennis and Thelma Marie Ennis ("the Debtors").

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A)&(B). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

---

[1] This Memorandum is filed for the sole purpose of correcting the date on which the debtors filed their petition.

1

*Facts*

On May 16, 2002, Mr. Ennis and Green Tree entered into a Manufactured Home Promissory Note, Security Agreement and Disclosure Statement to giving Green Tree a lien on a 1997 Fleetwood manufactured home, Serial Number/VIN NCFLV41A47134C013 ("the Home"). The Home is the Debtors' principal residence. The Home secures a debt in the original principal amount of $24,747.00.

On April 30, 2007, the Debtor filed the above styled petition. Green Tree filed a proof of claim in the amount of $24,801.16. The Debtors filed a chapter 13 plan that provides for the bifurcation of the claim into a secured claim in the amount of $12,000.00 and an unsecured claim equal to the amount of the secured portion of the claim less $12,000.00. The plan provides for the payment of the secured portion of the claim at 9% interest over a period of 55 months.

The home sits on a lot rented by the Debtors. The Debtors agree that the Home is their principal place of residence. The Home is taxed as personal property by Campbell County.

*Discussion.*

The issue is whether a debtor may, through the provisions of a chapter 13 plan, modify a creditor's claim that is secured only by an interest, or interests, in a mobile home that is the residence of the debtor. A chapter 13 plan may not "modify the rights of holders of secured claim, other than a claim secured only by a security interest in *real* property that is the debtor's principal residence . . ." 11 U.S.C. § 1322(b)(2) (Emphasis added.) Stated otherwise, a chapter 13 plan may not modify (1) a secured claim (2) that is secured by the debtor's principal residence; and (3) that is secured only by an interest in *real* property.

Both the first and second requirements are met. Green Tree's claim is secured by a lien

on the Home. The Home is the Debtors' principal residence. See 11 U.S.C. § 101(13A). ("The term 'debtor's principal residence' means (A) a residential structure, including incidental property, without regard to whether that structure is attached to real property; and (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.") Green Tree is the holder of a claim secured by the Home, which is the debtor's principal residence.

The only remaining issue is whether the Home constitutes "real property" as that term is used in section 1322(b)(2). In bankruptcy proceedings, property rights are to be defined under state law unless a countervailing federal interest requires a contrary result.

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.
>
> . . .
>
> To summarize then, while federal law creates the bankruptcy estate, Butner and the cases following it establish that state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework. Thus, we must first decide if a countervailing federal interest requires that we determine property interests here in a way different from that mandated by state law.

American Bankers Ins. Co. of Florida. v. Maness, 101 F.3d 358, 363 (4th Cir. 1996). And see Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Under Virginia law, the Mobile Home is defined as personal property for the purpose of assessing and levying property taxes. See Va. Code § 58.1-3503(6). "Tangible personal property is classified for valuation purposes according to the following separate categories . . . (6) Manufactured homes as defined in § 36-85.3 . . ." "Manufactured home" means a structure

subject to federal regulation, which is transportable in one or more sections; is eight body feet or more in width and forty body feet or more in length in the traveling mode, or is 320 or more square feet when erected on site; is built on a permanent chassis; is designed to be used as a single-family dwelling, with or without a permanent foundation, when connected to the required utilities; and includes the plumbing, heating, air-conditioning, and electrical systems contained in the structure." Va Code § 36-85.3   The Home is a manufactured home under Virginia law. The Home is personal property for purposes of the assessment and levy of Virginia property taxes.

The fact that the Home is personal property for purposes of assessing and levying property taxes under Virginia law does not necessarily mean that it is personal property for purposes of section 1322(b)(2)[2]. If a countervailing federal interest requires the Home to be treated as real property for purposes of section 1322(b)(2), then it must be deemed to be real property.

One Court has considered the purpose of the anti-modification exception in paragraph 1322(b)(2) and concluded from the legislative history that the  purpose of the residential real-property anti-modification exception in Section 1322(b)(2) was to protect the home mortgage industry.

> The legislative history says little in terms of political or social philosophy as such. However, it does reveal that the final language of section 1322(b) evolved from earlier language, incorporated in the bill apparently at the behest of representatives of the

---

[2] Terms are often defined differently under state law than they are under federal law.  For example, a debt arising pursuant to a the dissolution of a marriage may be a non-alimony debt under Section 523(a)(5) even though the parties, or the state court, designate that debt as alimony in their separation agreement.  See, e.g., Gionis v. Wayne (In re Gionis), 170 B.R. 675 (9th Cir. B.A.P. 1994) (Whether a state court's award of attorney fees in a marriage dissolution proceeding constitutes non-dischargeable alimony, maintenance, or support is question of federal law, the resolution of which is not bound by labels that were applied by the parties or the state court.)

> mortgage market, [Footnote 1, see infra] that would have prohibited modification of the rights of all creditors whose claims were wholly secured by mortgages on real property. Although the earlier language did not survive, the statute as finally enacted by Congress clearly evidences a concern with the possible effects the new bankruptcy act might have upon the market for homes. If any other policy objective of Congress was adequate to compete against the objective of protecting wage earners generally, it was a policy to encourage the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life. Congress had to face the reality that in a relatively free society, market forces and the profit motive play a vital role in determining how investment capital will be employed. Every protection Congress might grant a homeowner at the expense of the holders of security interests on those homes would decrease the attractiveness of home mortgages as investment opportunities. And as home mortgages decrease in attractiveness, the pool of money available for new home construction and finance shrinks.

In re Glenn, 760 F.2d 1428, 1433-34 (6th Cir. 1985). Footnote 1 in Glenn provides:

> This language appeared in the Senate version of the bill, S. 2266, 95th Cong., 2d Sess. § 1322 (1978), not long after Senate committee hearings at which Edward J. Kulik, representing the Real Estate Division of Massachusetts Mutual Life Insurance Company, testified that Chapter 13, as then proposed, might have the unintended effect of restricting the flow of home mortgage money. *See Bankruptcy Reform Act of 1978: Hearings on S. 2266 and H.R. 8200 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 95th Cong., 1st Sess. 707, 714-15 (1977) (statement of Edward J. Kulik, Senior Vice-President, Real Estate Division, Massachusetts Mutual Life Ins. Co.). Specifically, Mr. Kulik was concerned that provisions (1) allowing modification of rights of holders of secured claims and (2) protecting guarantors and codebtors as well as the Chapter 13 debtor might have this effect. He urged:
>
> Serious consideration should be given to modifying both bills so that, at the least: One, a mortgage on real property other than investment property may not be modified, and two, providing that the stay of actions against a guarantor or other codebtor is applicable only to guarantees executed after the effective date of the new legislation.
>
> Id. at 714.
>
> In response to Senator DeConcini's comments questioning the severity of the problem, Robert E. O'Malley, Mr. Kulik's counsel, stated:
>
> With respect to the savings and loans, in particular, and the future prospects for loans to individuals under the proposed bills, there is really only one basic problem. That is, the provision in both bills that provides for modification of the rights of the secured creditor on residential mortgages, a provision that is not contained in present law.

> I think the answer to your question is that, of course, savings and loans will continue to make loans to individual homeowners, but they will tend to be, I believe, extraordinarily conservative and more conservative than they are now in the flow of credit.
>
> It seems to me they will have to recognize that there is an additional business risk presented by either or both of these two bills if the Congress enacts chapter XIII in the form proposed, thus providing for the possibility of modification of the rights of the secured creditor in the residential mortgage area.
>
> I think the answer is that they will be much more conservative than they have been in the past.
>
> Id. at 715 (statement of Robert E. O'Malley, Attorney, Covington & Burling).

Id. at n. 1. Also see In re Seel, 22 B.R. 692 (Bankr. D. Kan. 1982) (Finding that the exception was included by Congress to provide stability in the residential long-term home financing industry by protecting institutional lenders engaged in providing long-term home mortgage financing.)

Because Congress' purpose of enacting the anti-modification exception to section 1322(b)(2) was to protect mortgage lenders and because mobile homes are generally financed by mortgage lenders, it is concluded that Congress intended to include mobile homes when it used the term real property in paragraph 1322(b)(2).

This conclusion is consistent with, and essentially required by, an opinion rendered by the Fourth Circuit Court of Appeals. See In re Witt, 113 F.3d 508 (4th Cir. 1997). In Witt, a case originating in the Bankruptcy Court for the Western District of Virginia, the Fourth Circuit Court of Appeals held that section 1322(b)(2) prohibited the debtors from modifying the secured creditor's claim in a case in which the facts were similar in all relevant aspects to the case at bar.

In Witt, the debtors owed $22,561.02 to a secured creditor. The "note was secured by a first deed of trust on the [debtors'] only residence, a mobile home and lot located in Appomattox County,

6

Virginia." Witt, 113 F.3d at 509. The debtors valued their home is $13,100.00. In their proposed Chapter 13 plan the debtors bifurcated the obligation to the secured creditor into a secured claim in the amount of $13,100.00 (representing the value of creditor's interest in the home) and an unsecured claim in the amount of the balance $9,461.02. The debtors provided in their plan that the secured claim would be paid out in full with interest at 10% over five years. The plan provided that the debtors would pay the creditor 30% of the balance of the claim, the same percentage that was to be paid to each unsecured creditor under the plan.

The creditor objected to the debtors' plan, claiming that the bifurcation of its claim modified its rights under the secured note in violation of 11 U.S.C. § 1322(b)(2). The Bankruptcy Court overruled the creditor's objection by holding that Section 1322(c)(2) created an exception to Section 1322(b)(2)'s prohibition against bifurcation of home mortgage debt. On appeal the district court reversed and remanded, concluding that Section 1322(c)(2) does not permit bifurcation. See United Companies Lending Corp. v. Witt, 199 B.R. 890, 895 (W.D.Va.1996). The debtors appealed to the Fourth Circuit Court of Appeals.

On Appeal, the debtors relied on Section 1322(c) which had been added by the 1994 Bankruptcy Reform Act. Section 1322(c) provides in relevant part that

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law-⋯
> . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Because the debtors' last payment on the original payment schedule was due before the date of the final payment under the plan, the parties agreed that the debtors' plan could "provide for payment

7

of the claim as modified pursuant to . . . [Section 1325(a)(5)]". The debtors argued that section 1322(c)(2) meant that they could modify the claim[3]; the creditor argued that the phrase meant that the debtors could modify the amount of each payment under their plan, but could not bifurcate the claim.

After parsing the language of Section 1322(c)(2), the Court agreed with the creditor's assertion that Section 1322(c)(2) did not permit the debtors to bifurcate the creditor's claim. "[W]e hold that § 1322(c)(2) does not permit the bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence. Because the Witts' bankruptcy plan proposed such a bifurcation, [the creditor's] objection to the plan was well taken." Witt, 113 F.3d at 513-514.

In Witt, the issue was the effect of Section 1322(c) on Section 1322(b)(2). In reaching its holding, the Fourth Circuit Court of Appeals necessarily held that a mobile home and lot, taken together, constitute "real property" as that term is used in section 1322(b)(2). If the Court had not first impliedly reached that conclusion, it would have never considered the issue of whether Section 1322(c)(2) modified Section 1322(b)(2). In this case the Home constitutes real property that is the Debtor's principle residence. Consequently, the Debtor's plan may not modify Green Tree's rights

---

[3]   As explained by the Court in Witt, 113F.3d at 511, n. 2.

   Under § 1325(a)(5), a Chapter 13 bankruptcy plan can only be approved if it meets one of three conditions with respect to each "allowed secured claim": (A) the holder of the claim has accepted the plan; (B) the holder both retains its lien and receives property worth at least the allowed amount of the claim; or (C) the holder is given the property securing the claim. The Witts contend that the term "allowed secured claim" must be interpreted according to 506(a) to mean only that portion of the claim which is equal to the current market value of the underlying collateral. Under such an interpretation, the requirement of § 1325(a)(5)(B) is met as long as the holder of the claim would receive the value of the claim that was still secured *after* bifurcation. Because the Witts' plan provides for full payment of the portion of United's claim that is still secured after bifurcation ( *i.e.,* $13,100), it would meet the requirements of § 1325(a)(5)(B) as interpreted by the Witts.

8

in the Home under Section 1322(b)(2).

The Debtors argue that the case at bar may be distinguished from opinions such as that in Witt because they do not own the land upon which the Home is placed. (Citing In re Herrin, Case No. 06-12249-WSS (Bankr. S.D. Ala. 2007). The Herrin Court held that Sections 1322(b)(2) and 101(13A) are not ambiguous and that the first section does not include property that is not real property.

The problem with this argument for a Bankruptcy Court sitting in the Fourth Circuit in the Western District of Virginia is that the Fourth Circuit Court of Appeals in Witt held that the debtors' residence was deemed to be real property for purposes of Section 1322(b)(2) even though it was a mobile home that was taxed as personal property under the laws of the Commonwealth of Virginia. The focus in Witt was on the residence, which was personal property under state tax law. It was not based on whether the debtor owned the land under the mobile home.

In order for the Debtors' argument to prevail, the implied premise in Witt that the mobile home was real property under Section 1322(b) would have to have necessarily been based on the fact that the mobile sat on real property owned by the debtor. And that means that in order for the Debtor's argument to prevail, the Witt Court would necessarily have to have held that the mobile home was transformed from personal property for state taxing purposes into real property for purposes of Section 1322(b) because it sat on real property owned by the debtor. The Fourth Circuit Court of Appeals in Witt did not engage in any such reasoning.

Furthermore, the analysis in Glenn was not based on whether the debtors in that case did or did not own the land upon which the mobile home was located. Rather, the analysis was based on the fact that the mobile home was financed, as is the ususal practice, by a mortgage company. The

Glenn Court looked behind the statute to the legislative history and determined that Section 1322(b)(2) applied to all debtors' residences.

## *Conclusion*

For purposes of 11 U.S.C. § 1322(b)(2) the Debtors' Mobile Home constitutes real property that is the Debtors' principal residence. Consequently, the Debtors' chapter 13 plan impermissibly modifies the secured claim of Green Tree Servicing, LLC. The objection of Green Tree Servicing, LLC to the confirmation of the Debtors' chapter 13 plan is sustained.

## **ORDER**

The objection by Green Tree Servicing, LLC, to the confirmation of the debtors' chapter 13 plan is sustained.

Upon entry of this Memorandum the Clerk shall forward a copy to W. Calvin Smith, Esq., counsel for Green Tree Servicing, LLC, Stephen E. Dunn, Esq. , counsel for the debtor, and Herbert L. Beskin, Esq., chapter 13 trustee.

Entered on this __17th__ day of October, 2007.

_____
William E. Anderson
United States Bankruptcy Judge